```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4-28-11
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
PATRICIA JUDAH HARRIS d/b/a PPH TAX &
ACCOUNTING,

                        Plaintiff,                11 Civ. 2152 (PKC)

      -against-

                                           MEMORANDUM AND ORDER

LESMINE FAIRWEATHER d/b/a PPH TAX &
ACCOUNTING, INC., MP MANAGEMENT and
PARKCHESTER APARTMENTS,

                        Defendants.
-----------------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.,

        Plaintiff Patricia Judah Harris moves to preliminarily enjoin defendant Lesmine Fairweather from conducting business as PPH Tax & Accounting, Inc. ("PPH, Inc.") at 2002 Cross Bronx Expressway, Bronx, NY. (Docket # 2.) The Complaint in this action asserts one count of "Trademark Infringement, Conversion and Unfair Competition" pursuant to the Lanham Act, 15 U.S.C. § 1114(1), one count of false advertising pursuant to the Lanham Act, 15 U.S.C. § 1125(a), and five claims for relief under New York law. (Compl. ¶¶ 48-74.)

        On April 6, 2011, the Court presided over a preliminary injunction hearing on the plaintiff's motion. Harris and Fairweather each testified at the hearing, and were subject to cross-examination. For the reasons explained, the plaintiff's motion is granted.[1]

---

[1] The Complaint seeks preliminary injunctive relief as to claims of prima facie tort, tortuous interference with contractual business relations and unjust enrichment. (Compl. at 14.) These claims are not raised in the plaintiff's memorandum of law. I do not consider them at this time.

FINDINGS OF FACT

The following are my findings of fact after hearing the testimony of the witnesses and assessing their demeanors.

Plaintiff Harris was a partner in an entity known as PPH Tax & Accounting ("PPH"), a tax-preparation business formed in 1986. (Tr. at 5, 7-8.) PPH operated out of a storefront at 2002 Cross-Bronx Expressway. (Tr. at 30.) Its two other partners were Herbert Williams and Margaret "Penny" Hall. (Tr. at 7, 10; Harris Aff't ¶ 3.) The business took the name PPH based on the partners' first names: Patricia, Penny and Herbert. (Tr. at 10; Harris Aff't ¶ 4.) Harris's principal role at PPH was recruiting new clients to the firm. (Tr. at 13; Harris Aff't ¶¶ 6-7.) She also was a signatory to the partnership's bank account and lease, and paid the rent from the PPH business account. (Harris Aff't ¶ 10.)

Williams died intestate in April 2008. (Tr. at 16.) At that point, Hall no longer wished to continue as a PPH partner. (Tr. at 16-17.) On October 28, 2008, Harris filed with the City Clerk a sworn statement by Hall stating that she no longer wished to be a partner, a copy of Williams's death certificate and an amended business certificate classifying PPH as a sole proprietorship. (Tr. at 17, 33-34; Harris Aff't ¶ 17 & Ex. B.) Harris continued to act as a signatory to the PPH bank account and oversaw $40,000 in renovations to the premises. (Harris Aff't ¶¶ 19, 21-22.)

Defendant Fairweather performed work as an independent contractor for PPH since 1986. (Tr. at 36, 41-42.) Fairweather was never a PPH partner. (Tr. at 42.) She married Williams in 2004, becoming his fourth wife. (Tr. at 36-37, 39; Harris Aff't ¶ 14.) Williams took ill approximately one month after marrying Fairweather. (Tr. at 39.) Fairweather testified that after Williams's death, she performed approximately 70 to 85

percent PPH's work, and was "shocked" to learn that Harris amended the business certificate to make PPH a sole proprietorship. (Tr. at 38.) Fairweather stated that she believed she was entitled to 95 percent of the business based on Williams's partnership interest. (Tr. at 43.)

Harris and Fairweather discussed incorporating PPH, and that, during these conversations, Fairweather requested that she receive 95% of PPH profits. (Harris Aff't ¶¶ 26-27.) Harris declined the proposal. (Harris Aff't ¶ 27.) Negotiations between Harris and Fairweather occurred through the summer of 2010, and Fairweather set forth certain of her demands in writing. (Harris Aff't ¶ 28 & Ex. E.)

Unbeknownst to Harris, in May 2010, Fairweather contacted the landlord of the PPH premises and purported to renew the lease in her own name. (Tr. at 21-22, 46-47; Harris Aff't ¶ 34.) Though unaware of Fairweather's actions, Harris continued to pay rent on the lease for the next two months. (Tr. at 47.) Harris then learned that, in January 2010, Fairweather had incorporated a business called PPH Tax & Accounting, Inc. (Tr. at 25.) Fairweather also changed the locks on the premises and instructed Harris to retrieve her personal belongings. (Tr. at 27, 29; Harris Aff't Ex. G.) In September 2010, Fairweather sent Harris a letter stating that Harris was no longer affiliated with PPH, Inc. (Harris Aff't Ex. F.) Fairweather printed business cards reading, "PPH Tax & Accounting, Inc., for 25 successful years." (Tr. at 50-51.)

Harris and Fairweather continued negotiations as to the future of PPH and PPH, Inc. until March 2011. (Harris Aff't ¶¶ 37-39.) Since Fairweather has assumed control of the premises, Harris has been contacted by clients who are confused as to the status of PPH. (Harris Aff't ¶ 41.)

Two additional PPH Tax & Accounting entities operate in New York City. One is in the Bronx, and is operated by Fairweather's brother. (Tr. at 32; Harris Aff't ¶¶ 8, 42.) The second is in Brooklyn and is operated by one of Williams's ex-wives. (Tr. at 32; Harris Aff't ¶ 8.) According to Harris, both of these PPH entities have been in operation for approximately 15 years. (Tr. at 33.) Harris stated that she and Williams permitted other tax preparers to call themselves PPH in order "to build PPH's name recognition." (Harris Aff't ¶ 8.)

PRELIMINARY INJUNCTION STANDARD

A court may issue a preliminary injunction only if the movant has demonstrated "'either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the [plaintiff]'s favor.'" Salinger v. Colting, 607 F.3d 68, 79 (2d Cir. 2010) (alteration in original; quoting NXIVM Corp. v. Ross Inst., 364 F.3d 471, 476 (2d Cir. 2004)). The plaintiff also must establish irreparable injury in the absence of an injunction. Id. at 79–80.

DISCUSSION

To prevail on a trademark infringement and unfair competition claim, a plaintiff must establish that its mark is protected, and also "must prove that the defendant's use of the allegedly infringing mark would likely cause confusion as to the origin or sponsorship of the defendant's goods with plaintiff's goods." Starbucks Corp. v. Wolfe's Borough Coffee, Inc., 588 F.3d 97, 114 (2d Cir. 2009).[2]

---

[2] Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), creates a federal cause of action for the infringement of an unregistered trademark. See, e.g., Genesee Brewing Co. v. Stroh Brewing Co., 124 F.3d 137, 142 (2d Cir. 1997). The defendant does not raise the affirmative defense that Harris's awareness of the other two PPH entities amounts to abandonment of the mark or a failure by the plaintiff to adequately police the mark. See,

The crucial issue in an action for trademark infringement is whether there is a "'likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled'" or "'confused'" as to a product source. Id. (quoting Savin Corp. v. Savin Group, 391 F.3d 439, 456 (2d Cir. 2004)). "'The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement.'" Id. (quoting Star Indus., Inc. v. Bacardi & Co. Ltd., 412 F.3d 373, 384 (2d Cir. 2005)). In Polaroid Corp. v. Polarad Electronics Corp., 287 F.2d 492, 495 (2d Cir. 1961), Judge Friendly, writing for the panel, set forth eight factors to be considered in determining the likelihood of confusion. They are: (1) the strength of the mark; (2) the similarity of the parties' marks; (3) the proximity of the parties' products in the marketplace; (4) the likelihood that the plaintiff will "bridge the gap" between the products; (5) evidence of actual consumer confusion; (6) whether the defendant acted with bad faith in adopting the mark; (7) the defendant's product quality; and (8) consumer sophistication. A court is not "limited to consideration of only these factors." Luis Vuitton Malletier v. Dooney & Bourke, Inc., 454 F.3d 108, 118 (2d Cir. 2006). No one Polaroid factor is dispositive. Nabisco, Inc. v. Warner–Lambert Co., 220 F.3d 43, 46 (2d Cir. 2000).

The principal dispute at this stage goes to the strength of the PPH mark. A mark's strength derives from an "inherent distinctiveness that would entitle it to protection in the absence of secondary meaning." Star Indus., 412 F.3d at 384. In ascending order of strength, a mark's distinctiveness is classified as generic, descriptive, suggestive, or arbitrary and/or fanciful. Id. at 384-85.

---

e.g., ITC Ltd. v. Punchgini, Inc., 482 F.3d 135, 146 (2d Cir. 2007); Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 110 (2d Cir. 2000); 15 U.S.C. § 1127.

The defendant argues that PPH is a descriptive mark, and therefore weak and not entitled to protection. The parties disagree as to the meaning of the PPH abbreviation. Plaintiff testified that it is short for "Patricia, Penny and Herbert." According to the defendant, PPH stands for "Prompt, Professional, and Honest," rendering it a descriptive mark that lacks distinction in the marketplace. See, e.g., Information Superhighway, Inc. v. Talk America, Inc., 395 F. Supp. 2d 44, 51 (S.D.N.Y. 2005) (Sweet, J.) ("Marks formed from combinations of well-known words or abbreviations have been found to be descriptive.") (collecting cases). "An abbreviation of a descriptive term may itself properly be classified as descriptive if it conveys to purchasers the descriptive connotation of the original term." GFC Financial Corp. v. GFC Capital Resources Grp., Inc., 1994 WL 30432, at *1 (S.D.N.Y. Feb. 2, 1994). However, when "the mark as a whole does not convey to purchasers the descriptive terms from which it is derived," the mark is arbitrary and protectable. Id. (concluding that the unregistered service mark GFC, abbreviating "Greyhound Financial Corporation," is protectable). I found Harris's testimony that PPH represented the initials of the founding members to be credible, and it is accepted.

In this instance, however, the underlying meaning of PPH is immaterial, because the business held itself out as PPH, and did not in any significant way market PPH as shorthand for another phrase. Whatever the underlying meaning of PPH, "the mark as a whole does not convey to purchasers the descriptive terms from which it is derived," GFC Financial, 1994 WL 30432, at *1, and is therefore arbitrary.

As to the other Polaroid factors, the marks of PPH and PPH, Inc. are identical, and, given that both are used to identify a tax-preparation business, in direct proximity. Hence, because PPH and PPH, Inc. both are in the tax-preparation business, the bridging-the-

gap factor is irrelevant.  As to bad faith, the record shows that Fairweather knowingly appropriated the PPH mark and held out PPH, Inc. as identical to PPH.  Harris has submitted affidavits that purport to reflect consumer confusion, and given that PPH, Inc. does business at PPH premises using the name PPH, at least some degree of consumer confusion appears likely.  Neither party has submitted probative evidence going to product quality or consumer sophistication.

Balancing the Polaroid factors, I find that, based on the record before me, the plaintiff has established a likelihood of success on the merits and irreparable injury.

Separately, defendant contends that Harris did not properly wind up the affairs of the PPH partnership, and that she, Fairweather, is owed 95 percent of the PPH partnership interest.  Her claim of right in the partnership is by, through and under her late husband's estate.  No judicial decree from a court competent to administer the estate of Mr. Williams has been submitted in support of the assertion.  Assuming arguendo that under New York law, Fairweather, as a beneficiary of Williams's estate, would have been entitled to an interest in PPH partnership assets, there is no basis in fact or law to conclude that Fairweather has a basis to engage in a self-help remedy to appropriate the business for herself.

Finally, on the issue of irreparable harm, "a 'plaintiff who establishes that an infringer's use of its trademark creates a likelihood of consumer confusion generally is entitled to a presumption of irreparable injury.'"  Zino Davidoff SA v. CVS Corp., 571 F.3d 238, 247 (2d Cir. 2009) (quoting Weight Watchers Int'l, Inc. v. Luigino's, Inc., 423 F.3d 137, 144 (2d Cir. 2005)).  In this case, plaintiff also has shown irreparable injury to the extent that she has lost control of the PPH mark based on the unilateral actions of Fairweather, and

-8-

has been deprived of the livelihood and income provided by her business.  (Tr. at 29; Harris Aff't ¶¶ 34, 42-45.)

CONCLUSION

Plaintiff's motion for a preliminary injunction is GRANTED.  Plaintiff is directed to submit an order on notice setting forth the proposed preliminary injunctive relief no later than May 4, 2011 at 3 p.m.  Plaintiff will be required to post a bond in the amount of $6,000 by May 13, 2011.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       April 28, 2011