```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5-2-12
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
PATRICIA JUDAH HARRIS d/b/a PPH TAX &
ACCOUNTING,

                Plaintiff,                11 Civ. 2152 (PKC)

    -against-

                                            MEMORANDUM
                                            AND ORDER
LESMINE FAIRWEATHER d/b/a PPH TAX &
ACCOUNTING, INC., MP MANAGEMENT and
PARKCHESTER APARTMENTS,

                Defendants.
----------------------------------------------------------------x
P. KEVIN CASTEL, District Judge:

        At the conclusion of a hearing on March 29, 2012, this Court granted plaintiff's motion for sanctions, ordering that the defendant's answer be stricken and that default judgment be entered in favor of the plaintiff. This Memorandum and Order further explains the basis for dismissal.

        This action was filed on March 29, 2011. (Docket # 1.) The Complaint asserts seven causes of action, including claims of federal trademark infringement and false advertising, 15 U.S.C. §§ 1114(1) & 1125(a). (Compl. ¶¶ 48-56.) Plaintiff asserts other claims under New York law, including injury to business reputation, "use of name or address with intent to deceive," tortious interference, prima facie tort and unjust enrichment. (Compl. ¶¶ 57-74.) On April 26, 2011, after conducting an evidentiary hearing at which Ms. Harris and Ms. Fairweather testified, this Court granted plaintiff's motion for a preliminary injunction, which enjoined defendant Fairweather "from conducting business in the name of PPH Tax & Accounting Inc." (Docket # 12, 20.) Following the grant of the preliminary injunction, the case remained pending and the Court issued a Civil Case Management Plan and Scheduling Order, providing that all fact

discovery be completed by November 11, 2011. (July 13, 2011, Docket # 22.) Interrogatories and document requests were to be served no later than September 1, 2011. (Docket # 22.)

The parties submitted a stipulation to the Court in which it was acknowledged that "defendant filed incomplete responses to" "plaintiff's first set of interrogatories and requests for production of documents." (Oct. 28, 2011, Docket # 38.) The Court ordered defendant to "file complete responses to plaintiff's first set of interrogatories and requests on production of documents no later than November 7, 2011 . . . ." (Order of Oct. 28, 2011, Docket # 38.)

On November 17, 2011, ten days after the court-ordered deadline for "complete" interrogatory responses and document production, the plaintiff filed a motion to compel. (Docket # 39.) In support of the motion, plaintiff attached defendant's responses to plaintiff's nine interrogatories. (Docket # 40.) The defendant had on a single page purported to respond to the nine interrogatories and six document requests. (Docket # 40.) The interrogatory responses were non-responsive, incomplete and unsigned, contrary to the requirement of Rule 33(b)(5), Fed. R. Civ. P.

Interrogatory No. 1 requested "the name and address and any other contact information" for persons or businesses whose taxes were prepared by defendant Fairweather or any other tax preparer who worked with her during 2011. (Docket # 40.) Defendant Fairweather's response stated in full, "The tax preparers are: Ava McCain and Tanya Porter,". (Docket # 40.) It included no information as to client identities. Interrogatory No. 2 asked defendant Fairweather to "please state which persons or businesses had their taxes prepared at PPH Tax & Accounting in any year previous to 2011." (Docket # 40.) The response stated in full: "The names of clients that had taxes prepared are list [sic] on the computer." (Docket # 40.) Interrogatory No. 6 requested "the amount of money defendant Fairweather paid herself and any

2

and all persons who worked with her during 2011 from the proceeds of the tax preparation business." (Docket # 40.) The response stated in full: "Ava $5000, Tanya Porter $2,000, Lakima $4,000, Lataunya $4,000." (Docket # 40.) Defendant Fairweather's other responses were similarly brief, imprecise and/or non-responsive. (Docket # 40.)

At a pretrial conference of December 15, 2011, the Court addressed the woeful inadequacies of defendant's interrogatory responses. On the record, the Court undertook a line-by-line review of the interrogatory responses, and explained their infirmities to defense counsel. The Court thereafter issued an Order granting the plaintiff's motion to compel. The Order stated:

> The motion to compel is GRANTED. Defendant shall provide full responses to interrogatories and full document production pursuant to the document requests and responses shall be signed in accordance with the Federal Rules of Civil Procedure and provided to plaintiff by December 23, 2011 or <u>the answer will be stricken and a default entered.</u>
>
> Defendant shall appear in the office of plaintiff's counsel on January 20, 2012 at 10 a.m. for her deposition. Fact discovery is extended to the completion of defendant's deposition.

(Docket # 44; emphasis added.)

On December 29, 2011, plaintiff submitted a letter to the Court, describing the continued deficiencies in defendant's discovery responses. The letter noted that in response to Interrogatory No. 1, defendant Fairweather listed "approximately 150 names which is a far cry from the 2000 clients that attorney Ward represented in open court on December 15, 2011 had used defendant Fairweather's services during 2011." (Docket # 47.) Interrogatory No. 3 requested defendant to identify the clients "Fairweather contends she alone, (and not through her deceased husband) was the person responsible . . . . for recruiting." (Docket # 47.) Defendant Fairweather responded, "These clients exit [sic] as a result of the joint efforts of my husband and me." (Docket # 47.) The plaintiff identified deficiencies in six of defendant's nine interrogatory

3

responses, as well as numerous deficiencies in defendant's responses to the six document requests. (Docket # 47.)

On January 6, 2012, the Court entered an order requiring a deposition of defendant Fairweather to determine "the extent of her compliance with this Court's Order of December 15, 2011, i.e. whether she has provided full responses to interrogatories and full document production." (Docket # 47.)

At the deposition of January 20, defendant Fairweather acknowledged multiple deficiencies both in the interrogatory responses and the responses to plaintiff's discovery requests. When asked about the completeness of the response to Interrogatory No. 1, Fairweather stated, "I gave a list based on what I have on my computer. I did not double-check to make sure that everything is there because I did not have any more time. That is my answer." (Mirer Aff. Ex. 5 at 68.) Plaintiff's counsel asked, "So, sitting here today, you cannot tell me whether this is a complete list or not?" to which defendant Fairweather answered, "No." (Mirer Aff. Ex. 5 at 68.) Defendant acknowledged that her response wrongfully omitted more than 32 specific individuals identified by plaintiff's counsel. (Mirer Aff. Ex. 5 at 69, 89-90, 91-92, 129-30.) As to Interrogatory No. 2, defendant testified, "[i]t is possible that I did not completely answer the question the way it should be answered." (Mirer Aff. Ex. 5 at 99.) She also testified that her responses to document requests were incomplete. (Mirer Aff. Ex. 5 at 115, 125-26.)

Plaintiff filed this motion for sanctions on February 17, 2012. (Docket # 49.) The Court extended the deadline to submit opposition papers to March 27. (Docket # 64.) On March 26, the Court received a letter from Jacinth Fairweather-Panton, Esq., stating that she was now attorney to defendant Fairweather, and requesting that the deadline to submit papers in opposition be extended to April 9. (Docket # 65.) In a memo endorsement, the Court observed

that "[a]s of this hour, there is no notice of appearance on file with the Clerk for Ms. Fairweather-Panton," and that, because the dispute implicated plaintiff's tax-preparation business in the middle of tax season, an adjournment would not be appropriate. (Docket # 65.) The Court advised defense counsel to confer with plaintiff's counsel "on all aspects of the case," and scheduled a hearing for March 29. (Docket # 65.) On March 27, a partner in Ms. Fairweather-Panton's law firm entered a notice of appearance on behalf of defendant. (Docket # 66.)

Prior to the hearing, plaintiff Harris submitted an affidavit stating that subsequent to the January 20 deposition, while working in the PPH office at 2002 Cross Bronx Expressway, she "found a box in the back of the office which contained copies of over forty checks that had been processed through Lindo Fairweather's office." (Harris Aff't ¶ 40.) Lindo Fairweather is the brother of defendant Fairweather, and he operated a business known as PPH Tax Centers on Boston Road in the Bronx. (Harris Aff't ¶ 34.) The PPH Tax Centers on Boston Road is not affiliated with the PPH office at 2002 Cross Bronx Expressway. Plaintiff's counsel explained that the checks were refund checks payable to customers at 2002 Cross Bronx Expressway, but that they were issued on bank accounts used by Lindo Fairweather, not defendant Lesmine Fairweather. (Mar. 29 Tr. at 7-9.) The checks were dated between January 29 and February 16, 2011. (Harris Aff't ¶ 44.)

Harris states in her affidavit that she has "consistently suspected" that defendant Fairweather "was using her brother . . . to process customers who came to PPH in 2011 in order to hide the number of customers she serviced." (Harris Aff't ¶ 34.) At deposition, defendant Fairweather stated three times that she had not used Lindo Fairweather's bank account to process tax returns for those customers whose taxes were prepared at 2002 Cross Bronx Expressway. (Mirer Aff. Ex. 5 at 20-21, 26, 106.) The checks also reflected that defendant Fairweather had

5

performed tax services for "many" individuals not identified in Interrogatory No. 1. (Harris Aff't ¶¶ 46, 48.)

At the hearing of March 29, defendant Fairweather submitted an affidavit stating that she misunderstood the questions at deposition. (Mar. 29 Tr. at 14-15.) Defendant's counsel acknowledged that some of the clients had been processed through the brother's account, but she was unable to estimate how many. (Mar. 29 Tr. at 15-16, 18.) Defense counsel represented that she was further unable to state whether defendant Fairweather had produced a full and accurate list of clients. (Mar. 29 Tr. at 18.)

The checks, copies of which are attached to Harris's affidavit, reflect that defendant Fairweather performed work for a significant number of clients whose identities were not disclosed in response to Interrogatory No. 1. These checks also reflect that defendant Fairweather may not have been truthful in her deposition when she denied that using Lindo Fairweather's bank account to process tax returns, although, as noted, defendant Fairweather represented on March 29 that she misunderstood the questions. (Mirer Aff. Ex. 5 at 20-21, 26, 106; Mar. 29 Tr. at 14-15.)[1]

At the March 29 hearing, the Court observed that entry of default judgment is "an extreme and rarely awarded sanction." (Mar. 29 Tr. at 3.) The Court stated that defendant Fairweather's response to Interrogatory No. 1 "was materially deficient." (Mar. 29 Tr. at 20.) The Court further stated:

> A Court must be mindful of the possibility that there could be a minor immaterial deficiency in a party's discovery response which warrants lesser sanctions. In this case, the original interrogatory response was completely deficient and defendant Fairweather

---

[1] The exchanges at defendant Fairweather's deposition included the following: "Q: Did you use, at any time, your brother's account? A: No." (Mirer Aff. Ex. 5 at 20.) "Q: You are claiming that there were no funds ever deposited in the funds for PPH Tax & Accounting, Inc. that were run through your brother Lindo's account? A: That's correct." (Mirer Aff. Ex. 5 at 26.)

6

> driveled out 150 names, approximately, of customers who she serviced in 2011. And the plaintiff has succeeded in proving that that list was deficient by at least 45.
>
> The problem when someone is not honest in their interrogatory responses is we don't know the full extent of the dishonest responses, the responses that have material omissions. And a deficiency of 46 or so, really enlargening the list by a sizeable percentage, is not immaterial. And that's been proven. And defense counsel and her client cannot even say that the failure to list is deficient only by that number which has been proven.
>
> There is prejudice to the plaintiff by reason of the delay in being able to go forward with the completion of this case on the merits. It required me to order the plaintiff's appearance on January 20 for a deposition. And I've given the defendant opportunity – defendant to appear for a deposition. I've given the defendant plenty of opportunity to respond in this court.
>
> There was a clear and meaningful warning to the defendant as to the consequence of a failure to comply with this ordered entered by the Court pursuant to Rule 37. And because the defendant was warned with the ultimate sanction of dismissal, there is no reason to believe that a lesser sanction would be efficacious.

(Mar. 29 Tr. at 21-22.) When invited to explain why the Court should not strike the answer and enter default, defense counsel argued that the deficient responses were the fault of defendant's former attorneys. (Mar. 29 Tr. at 22.)

Rule 37(b)(2)(A), Fed. R. Civ. P., provides that "[i]f a party . . . fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders." The rule recites a range of sanctions, including deeming a disputed fact to be established, precluding evidence on a subject, or striking a pleading and entering a default. See Rule 37(b)(2)(A)(i-vii). The Second Circuit has set forth several factors to be considered in determining the issue of sanctions under Rule 37, including "(1) the willfulness of the non-compliant party or the reason for noncompliance; (2) the efficacy of lesser sanctions; (3) the duration of the period of noncompliance, and (4) whether the non-compliant party had been

7

warned of the consequences of . . . noncompliance." Agiwal v. Mid Island Mortg. Corp., 555 F.3d 298, 302 (2d Cir. 2009) (per curiam) (internal quotation marks omitted).

Based on this record, the Court concludes that defendant Fairweather's continuous non-compliance has been willful, that she was expressly warned of the consequences of non-compliance and that a lesser sanction would not be efficacious. Agiwal, 555 F.3d at 302. On October 28, 2011, defendant Fairweather was ordered to file complete responses to plaintiff's interrogatories and requests for production of documents by November 7, 2011. (Docket # 38.) Plaintiff's subsequent motion to compel pointed out deficiencies in the responses, and the defendant failed to cure them. The Court issued a second order on December 15, 2011, directing the defendant to provide "full responses to interrogatories and full document production" by December 23, and warned that the answer would "be stricken and a default entered" if the responses were deficient. (Docket # 44.) This Court concludes that defendant Fairweather did not obey these orders. In the plaintiff's letter of December 29, 2011, and the Court's order of January 6, 2012, defendant was placed on notice that compliance remained an issue, yet there was no supplement made to the discovery responses. At the deposition of January 20, 2012, the defendant acknowledged numerous deficiencies in her responses. (See generally Mirer Aff. Ex. 5.) Again, despite the warning of a default, there was no effort to cure these deficiencies after the deposition.

The approximately 45 check receipts that defendant Fairweather processed through a bank account affiliated with her brother reflect work performed for clients who were not identified in response to Interrogatory No. 1. In her deposition, the defendant repeatedly denied using her brother's bank account for these purposes. (Mirer Aff. Ex. 5 at 20-21, 26, 106.)

8

This conduct is evidence of a willful attempt to evade discovery obligations and of noncompliance with the Court's order.

The defendant's non-compliance has prejudiced the plaintiff. As of the March 29 hearing, approximately seven months had passed since the plaintiff first served interrogatories and document requests. Defendant Fairweather's responses remained materially inadequate, hindering plaintiff's ability to prosecute this case to completion. The noncompliance has been repeated and significant, and has materially frustrated the progress of this case.

In light of the foregoing, this Court concludes that the sanction of dismissal is warranted, and directs the Clerk to strike the Answer and to Certificate of Default against defendant Lesmine Fairweather. Rule 37(b)(2)(A); Argiwal, 555 F.3d at 302.

A damages inquest is appropriate when damages are not liquidated or discernible through mathematical computation. See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc., 109 F.3d 105, 111 (2d Cir. 1997). The matter will be referred to Magistrate Judge Andrew Peck to hear and report.

CONCLUSION

For the foregoing reasons and the reasons stated on the record at the hearing of March 29, plaintiff's sanctions motion is granted. The Clerk is directed to strike the answer of defendant Lesmine Fairweather and enter a Certificate of Default.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated:   New York, New York
         May 2, 2012

9