DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-19-12

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
PATRICIA JUDAH HARRIS, d/b/a PPH
TAX & ACCOUNTING,

       Plaintiff,      11 Civ. 2152 (PKC) (AJP)

  -against-

               ORDER ADOPTING REPORT AND
               RECOMMENDATION

LESMINE FAIRWEATHER, d/b/a PPH TAX &
ACCOUNTING, INC., MP MANAGEMENT and
PARKCHESTER APARTMENTS,

       Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

    This action arises out of a dispute concerning the trademarks and ownership of PPH Tax & Accounting, Inc., a tax-preparation business located in the Bronx. After an evidentiary hearing in April 2011, this Court granted plaintiff's motion for preliminary injunction pursuant to the Lanham Act, 15 U.S.C. § 1114(1), concluding that consumer confusion was likely due to defendant Fairweather's appropriation of the PPH mark. <u>Harris v. Fairweather</u>, 2011 WL 1630984 (S.D.N.Y. Apr. 28, 2011). The Court later granted in part plaintiff's unopposed motion "to clarify" the injunction, and enjoined Fairweather's continued use of the PPH phone number and the PPH offices at 2002 Cross Bronx Expressway. <u>Harris v. Fairweather</u>, 2011 WL 4538436 (S.D.N.Y. Sept. 29, 2011). Plaintiff also asserts claims of false advertising under the Lanham Act, 15 U.S.C. § 1125(a), infringement and unfair competition under New York General Business Law § 360-K, "injury to business reputation," "use of name or address with intent to deceive," tortious interference, prima facie tort and unjust enrichment. (Compl't ¶¶ 48-74.)

Plaintiff moved for sanctions based upon defendant's material non-compliance with discovery orders and her false responses to discovery requests. (Docket # 49, 56.) The Court conducted a hearing on March 29, 2012. (Minute Entry, 3/29/12.) The Court issued a Memorandum and Order recounting defendant Fairweather's consistent and willful non-compliance with this Court's discovery orders, which persisted even after the Court warned defendant that her ongoing non-compliance could lead to entry of default. Harris v. Fairweather, 2012 WL 1551719 (S.D.N.Y. May 2, 2012). The Memorandum and Order also reviewed evidence showing that defendant Fairweather had been untruthful in her discovery responses. Id. at *4-5. The Court concluded that striking defendant's answer was the only efficacious sanction because her non-compliance persisted despite the Court's prior warning.

After default judgment was entered, the Court referred this action to Magistrate Judge Andrew J. Peck for an inquest on damages. (Docket # 73.) On September 10, 2012, Magistrate Judge Peck issued a Report and Recommendation (the "R&R") recommending that plaintiff Patricia Judah Harris be awarded $261,866.98 in damages and attorneys' fees, and also recommending that she be granted certain injunctive relief. (Docket # 99.) Both plaintiff and defendant Lesmine Fairweather have filed objections to the R&R.

For the reasons explained, the R&R is adopted.

SUMMARY OF THE R&R.

The parties' initial submissions before the magistrate judge were sufficiently infirm that they necessitated an Order directing supplemental filings. (Docket #95.) That Order noted, among other things, that "the briefs fail to cite to controlling legal authority or any legal authority at all," that plaintiff submitted "inconsistent" figures, and that the parties had failed to offer probative evidence on several relevant issues. (Docket # 95.) The docket reflects that

plaintiff Harris thereafter filed a supplemental memorandum and affidavits. (Docket # 96-98.) As noted in the R&R, defendant Fairweather made no additional submissions. (R&R at 5.)

The thirty-page R&R reviews the parties' damages evidence in detail. It first discusses damages under the Lanham Act, 15 U.S.C. § 1117(a). The R&R observes that defendant Fairweather is a willful infringer by reason of her default. (R&R at 8 (collecting cases).) The R&R then calculates evidence going to the quantum of Fairweather's profits. It reviews evidence showing that Fairweather serviced a total of 1,040 clients in 2011 using the PPH mark and that she serviced 752 clients in 2012. (R&R at 8-9.) The R&R credits Harris's representation that in past years, each PPH client was charged an average of $75. (R&R at 9.) Multiplying the number of clients by $75 each, the R&R recommends that Harris be awarded $134,400 to reflect Fairweather's profits for 2011 and 2012. (R&R at 9.) As explained by Magistrate Judge Peck: "Although this method of calculating damages is not exact, I find it to be reasonable and appropriate under the circumstances." (R&R at 9.) The R&R notes that Fairweather failed to submit documents regarding her costs or expenses, and that she submitted no evidence to distinguish her gross revenues from her net revenues. (R&R at 9.) Because the defendant has the burden to prove any claimed cost or deduction, 15 U.S.C. § 1117(a), the R&R concludes that plaintiff is entitled to recover Fairweather's gross revenue of $134,400, with no reductions for expenses. (R&R at 9-10.)

The R&R next reviews evidence going toward Harris's entitlement to damages, in addition to her recovery of Fairweather's profits. The text of the Lanham Act permits a plaintiff, "subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." See 15 U.S.C. § 1117(a). The R&R first rejects Harris's claim that she is entitled to an award of gross revenue (as opposed to net revenue) for

4

2011 and 2012. (R&R at 11-12.) Reviewing plaintiff's evidentiary submissions, the R&R concludes that Harris should be awarded $39,301.52 in lost profits for 2011 and $26,681.59 for 2012, totaling $65,983.11. (R&R at 12-13.) The R&R recommends that the Court deny plaintiff's request for treble damages under 15 U.S.C. § 1117(a), noting that the provision is intended to be compensatory and not a penalty, and that plaintiff has offered no evidence that a treble award is needed for compensation. (R&R at 12-13.)

    Plaintiff also seeks an award of $74,890 in attorneys' fees, pursuant to 15 U.S.C. § 1117(a). The R&R concludes that in light of defendant's default and willful conduct, this qualifies as an "exceptional" case under 15 U.S.C. § 1117(a), therefore making a fees award appropriate. (R&R at 14.) As described in the R&R, the initial record filed in support of plaintiff's fee application was so infirm that supplemental submissions were required. (R&R at 17.) Counsel to plaintiff states that as to legal fees, Harris was charged "$250 per hour for all hours worked by anyone in the firm." (R&R at 17.) The R&R notes that the billing record reflects instead that some personnel were internally listed at rates of $125 per hour. (R&R at 18.) Stating that the quality of attorney work is one factor in a fee application, the R&R observes that "[t]he documents that counsel submitted in connection with the inquest were mediocre, included numerous errors, and failed to cite to authority for much of the relief requested." (R&R at 18.) "The poor quality of counsel's work justifies a reduction in the fee award." (R&R at 18.) Magistrate Judge Peck further states that the attorney time entries were often vague "or reflected excessive time spent on tasks." (R&R at 18.) The R&R employs the $250 hourly rate requested by plaintiff, but recommends that the Court reduce plaintiff's requested attorneys' fees by 20%, for a fee award of $59,912. (R&R at 19.) It also recommends that plaintiff be awarded

$1,571.87 in costs, noting that portions of the $2,356.86 in costs sought by plaintiff were not properly documented. (R&R at 20 & n.24.)

The R&R recommends that the Court deny in full plaintiff's request for $120,000 in "future damages" under the New York law of unfair competition. (R&R at 21-22.) It states that the damages calculation "is too speculative" and that plaintiff has provided "no basis for these figures." (R&R at 21.)

The R&R next reviews plaintiff's demand for injunctive relief. It recommends that the Court permanently enjoin defendant Fairweather from conducting business in the name of PPH Tax and Accounting, PPH Tax and Accounting, Inc., "or any other confusingly similar name." (R&R at 22-24.) It recommends that plaintiff Harris be released from her preliminary injunction bond. (R&R at 24.) Magistrate Judge Peck also recommends that, pursuant to New York unfair competition law, the Court should permanently enjoin defendant Fairweather from soliciting business based on PPH customer lists and to compel the returns of all PPH files and computers. (R&R at 25-26.) The R&R concludes that such customer information is not a trade secret, but that New York law precludes their use if the information is attained via misappropriation. (R&R at 25-27.)

The R&R recommends that the Court deny Harris's request for a permanent injunction against Fairweather from uttering "disparaging or otherwise negative statements" as to Harris or PPH. (R&R at 27-28.) Such an injunction would violate Fairweather's First Amendment rights and inhibit legitimate competition, the R&R states. (R&R at 28.) Lastly, the R&R recommends that the Court deny plaintiff's request to permanently enjoin Fairweather from conducting a tax-preparation business within seven miles of PPH offices at 2002 Cross Bronx Expressway. (R&R at 28-29.)

DISCUSSION

In reviewing a Report and Recommendation, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). In the event that a party files objections to the magistrate judge's recommendations, district courts conduct a de novo review of those matters to which a party filed an objection. Id. § 636(b)(1)(B), (C).

  A. The R&R Is Adopted as to Its Proposed Injunctive Relief.

Plaintiff objects to the recommendation against enjoining defendant Fairweather from operating a tax-preparation business within seven miles of the PPH office at 2002 Cross Bronx Expressway. (Obj. at 2-4.) Plaintiff's objections assert that Fairweather lacks personal ties to the neighborhood, "has no reason to be in the Parkchester neighborhood," and asserts that the name of Fairweather's new business, "1950 X Bronx Tax Xpress," was selected "to continue to cause confusion." (Obj. at 3.) These objections are baseless. The name 1950 X Bronx Tax Xpress bears no discernible similarity to PPH Tax & Accounting, Inc. and plaintiff cites no evidence of consumer confusion. To the extent that a court has "considerable discretion" and flexibility in crafting equitable remedies, see, e.g., Patsy's Italian Restaurant, Inc. v. Banas, 658 F.3d 254, 269 n.6 (2d Cir. 2011), this Court declines to exercise its authority to grant such broad, sweeping and unwarranted relief.

  B. The R&R Is Adopted as To Its Denial of Future Damages.

Plaintiff next objects to the recommendation that plaintiff not be awarded "future damages." (Obj. at 4-5.) In support, plaintiff cites an affidavit from a non-party that recounts negative and purportedly untruthful statements that Fairweather allegedly uttered about Harris. (Obj. at 4-5.) Plaintiff argues that future damages are required in order to compensate her for

prospective lost business caused by such comments. (Obj. at 5.) For all of the reasons discussed in the R&R, plaintiff's claimed entitlement to future damages is wholly speculative, and plaintiff has cited no authority entitling her to the requested relief. (Obj. at 5.)

Plaintiff suggests that as an alternative to awarding her approximately $120,000 for future damages, the Court award her a total of $28,447.27. (Obj. at 5.) This lower figure purports to reflect future net losses caused by Fairweather's conduct, as opposed to the higher figure's future gross losses. (Obj. at 5.) This claim for damages remains speculative, and is not supported by any citations to authority or evidence.

The R&R's recommendation to deny future damages is adopted.

C. The Attorneys' Fees Award Proposed by the R&R Is Adopted.

Lastly, plaintiff objects to the R&R's calculation of attorneys' fees. Plaintiff's counsel defends the quality of the attorney work product and argues that Magistrate Judge Peck's recommendation to reduce plaintiff's proposed fee award was unwarranted. (Obj. at 6-7.) Counsel also explains the basis for the billing arrangement in which plaintiff was charged a flat rate of $250 per hour for all work performed on the case:

> As noted in the prior affirmations of plaintiff's counsel, because of the relationship of Ms. Harris to the firm through her work at a union the firm had represented, the firm agreed to charge her at a lower rate than the firm's regular rate. The firm used law students and law graduate work as much as possible so that partner time could be used for work which was not at the lower rate. That is why there were many law graduates and law students who spent time on the case. Plaintiff sought compensation for approximately 100 hours of law student or law graduate time. Given the outcome of the case, this is not an excessive amount of time.

(Obj. at 7.)

"The court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a). Whether to award fees is a matter of discretion. Patsy's

Italian Restaurant, 658 F.3d at 268. Attorneys' fees are awarded if there is evidence of willfulness and bad faith. Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 111 (2d Cir. 2012). As explained in the R&R, attorneys' fees are warranted in this instance, given not only Fairweather's default but also in light of her self-help appropriation of the PPH mark. See 2011 WL 1630984, at *3-4; R&R at 14.

"In assessing the reasonableness of attorney's fees, a court looks to the amount of time spent as reflected in contemporaneous time records, and then decides how much of that time was reasonably expended." Louis Vuitton, 676 F.3d at 111 (quotation marks omitted). In reviewing plaintiff's objections, this Court has scrutinized the evidence submitted in support of the proposed fee award, including the Supplemental Affirmation of August 27, 2012 (Docket # 96), and Exhibit A of the Mirer Declaration of July 10, 2012, which attaches billing records for work performed on this matter. (Docket # 92, Ex A.) The Court also has reviewed the Mirer Affidavit of June 8, 2012, which explains that the firm has charged Harris an hourly rate of $250 for all work performed. (Docket #81-5 ¶ 4.) That affidavit also states that "counsel would request that the rate be determined based on years of experience, and other factors rather than what plaintiff was charged." (Id.)

In determining whether attorney fees are reasonable, the court must adopt a "presumptively reasonable fee," with an hourly rate that reflects "what a reasonable, paying client would be willing to pay." Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany, 522 F.3d 182, 183, 184 (2d Cir. 2008). Factors relevant to this determination include:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the

>amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Id. at 187 n. 3 (citing Johnson v. Ga. Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974)). In addition to these factors, a court should also consider "that a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively" and that the client "might be able to negotiate with his or her attorneys" in setting the fee. Id. at 190.

Although it is not a typical fee arrangement, it would be economically rational and reasonable for a client to agree to the flat hourly fee of $250 for all work performed on this matter, regardless of personnel status within the law firm. Jeanne E. Mirer, who billed 199.65 hours on this case, states that she normally bills clients at a rate of $500 per hour. (Docket # 96 ¶¶ 3, 9.) A partner at her firm, Eugene G. Eisner, billed 9.80 hours on the case, and has a standard billing rate of $650 per hour. (Docket # 96 ¶ 10.) Six other employees of Eisner & Mirer, P.C. ("Eisner & Mirer") billed a total of 118.95 hours. (Docket # 96 ¶¶ 11-16.) These individuals are identified as "law clerk[s] or law graduates," and are typically billed at a rate of $150 per hour. (Docket # 96 ¶ 3.) At the standard rates of Ms. Mirer, Mr. Eisner, the law students and law graduates, total fees would have amounted to $124,037.50. Under the fee arrangement between plaintiff and her lawyers, she was charged a $250 hourly rate for all hourly work, and, thus, plaintiff instead seeks a total award of $74,890. (Docket # 96 ¶ 18.) As noted, plaintiff's counsel has explained that this fee arrangement arose from Eisner & Mirer's past relationship with the plaintiff (Obj. at 7), and this Court concludes that a reasonable client could comfortably agree to the billing arrangement explained by plaintiff's counsel.

At the same time, there are material inconsistencies and a lack of clarity in plaintiff's application, the hours summarized in Mirer's affidavit and the proposed total fees award. The R&R recites certain of these inconsistencies.[1] Moreover, by this Court's calculation, adding all of the billing hours recited in the Mirer affidavit, 328.40 hours of work was performed on this case, not the 301.20 cited by plaintiff. (Docket # 92 ¶ 7.) No explanation or means of differentiation is offered for the gap

I approve the 20% reduction employed by Magistrate Peck. In reducing the fee award, I place particular weight on the lack of precision reflected in the fee application. See, e.g., James v. Nat'l R.R. Passenger Corp., 2005 WL 6182322, at *13 (S.D.N.Y. Mar. 30, 2005) ("courts frequently reduce fees across the board" based on imprecise billing records) (collecting cases). I employ this reduction while mindful that certain of plaintiff's fees were incurred as a result of conduct by the defendant that obstructed the progress of this action and was deemed worthy of entry of judgment by default. In light of the record submitted in support of the fee application, I adopt Magistrate Judge Peck's recommendation of an award of $59,912 in attorneys' fees.

Separately, I adopt in full the R&R's recommendation that plaintiff be awarded $1,571.87 in costs. (R&R at 20.)

D. Defendant's Objections to the R&R Are Meritless.

Defendant Fairweather, who is represented by counsel, has submitted objections to the R&R on her own behalf.[2] Most of the objections do not address the merits of the R&R,

---

[1] Magistrate Judge Peck noted that plaintiff's counsel never identified an individual listed in the billing records with the abbreviation "TF." (R&R at 18 n.22.) The R&R observes that in the affidavit, Kristina Mazzocchi is listed as working 15.20 hours, but billing records reflect that she performed only 0.2 hours of work. (Id.) The affidavit states that Steve Skelly worked 19.5 hours, but the contemporaneous billing records reflect that Harris was charged for only 6.5 hours of work. (Id.)

[2] The objections were submitted to Magistrate Judge Peck, who forwarded them to the undersigned. The Court has scanned and docketed the objections.

instead recounting Fairweather's history with PPH and the disintegration of her personal and professional relationship with plaintiff. On the final page of the objections, defendant Fairweather appears to dispute certain of the damages calculations in the R&R, and attaches two exhibits that purport to reflect the gross proceeds that defendant accrued while operating under the PPH mark. (Objections at Exs. L & M.) The two exhibits appear to be self-generated summaries of PPH expenses, and purport to reflect that Fairweather lost $2,270.54 in 2011 and has earned $1,492.11 in 2012. With no supporting documentation as to expenses and no explanation for certain entries,[3] the objections do not set forth a basis to modify the R&R.

## DEFENDANTS MP MANAGEMENT AND PARKCHESTER APARTMENTS ARE DISMISSED FROM THE ACTION.

Lastly, although not a subject of the R&R, defendants MP Management and Parkchester Apartments are dismissed sua sponte. Although served with process (Docket # 6), defendants MP Management and Parkchester Apartments have never appeared in this action, and plaintiff has pursued no relief against them. According to the Complaint, they are defendants as necessary parties to this action, "because the lease in question needs to be reformed . . . ." (Compl't ¶ 7.) Presumably, the "lease in question" refers to the lease on the PPH offices at 2002 Cross Bronx Expressway.

Because plaintiff has sought no relief against these two defendants, any claims against them are waived, and they are dismissed from this action.

## CONCLUSION

Having reviewed the R&R de novo, it is adopted in its entirety. Plaintiff is awarded $261,866.98 in damages, attorneys' fees and costs. Defendant Fairweather is permanently enjoined from conducting business in the name of PPH Tax and Accounting, PPH

---

[3] The expenses include entries such as, "Independent Preparer – Patterson," "Miscellaneous," and "Membership Fees." (Objections Exs. L & M.)

Tax and Accounting, Inc., or any other confusingly similar name. Defendant Fairweather also is permanently enjoined from soliciting business based on PPH customer lists, and is ordered to return any files and computers to PPH. The preliminary injunction bond of $6,000 is exonerated.

The Clerk is directed enter judgment in accordance herewith and close this case. All motions are terminated.

SO ORDERED.

Dated: New York, New York
October 19, 2012

P. Kevin Castel
United States District Judge